UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
--------------------------------------------------------X
CARLOS MIGUEL FUENTES,

                        Plaintiff,

v.

SGT. PAUL SCHEMMER, et al.,

                        Defendants.
--------------------------------------------------------X

**<u>OPINION AND ORDER</u>**

18-CV-08207 (PMH)

PHILIP M. HALPERN, United States District Judge:

Carlos Miguel Fuentes ("Plaintiff"), initially *pro se*, brings this action against Ossining Police Sergeant Paul Schemmer ("Schemmer"), and the Village of Ossining (the "Village," and together, "Defendants"), asserting five claims for relief under 42 U.S.C. § 1983: (i) violation of constitutional rights; (ii) excessive force and assault; (iii) false arrest and malicious prosecution; (iv) negligence; and (v) a claim of municipal liability under *Monell v. Dep't of Soc. Servs. of City of New York*, 436 U.S. 658 (1978) ("*Monell*"). (Doc. 40, "Am. Compl." at 7-11). Plaintiff's claims arise out of his traffic-stop arrest and subsequent booking. (*Id.*).

Pending presently before the Court is Defendants' motion for summary judgment seeking dismissal of the operative Amended Complaint under Federal Rule of Civil Procedure 56. (Doc. 56; Doc. 57, "Svensson Decl."; Doc. 58, "Def. Br."; Doc. 45, "56.1").[1] Plaintiff opposed Defendants' motion (Doc. 60, "Opp. Br.") and the motion was fully submitted with the filing of the motion, opposition, and Defendants' reply brief (Doc. 59, "Reply") on August 10, 2022.

---

[1] The Court notes that Plaintiff stopped responding to Defendants' assertions of fact in the joint Rule 56.1 statement on page 23 of the 38-page document. Each of Defendants' assertions supported by record evidence that Plaintiff does not dispute are hereby deemed admitted. *Emanuel v. Gap, Inc.*, No. 19-CV-03617, 2022 WL 3084317, at *4 (S.D.N.Y. Aug. 3, 2022) ("Local Rule [56.1] contemplates the factual statement deemed admitted unless specifically controverted and supported by evidence which would be admissible at trial.").

For the reasons set forth below, Defendants' motion is GRANTED and the Amended Complaint is dismissed with prejudice.

## **BACKGROUND**

Village police officers observed Plaintiff, a known drug dealer, outside the home of Terri Skourakis ("Skourakis") during a narcotics investigation on the night of December 30, 2015. (56.1 at 1-2).[2] The officers watched Skourakis come up to the door of Plaintiff's car and hand him money in exchange for something that she put into her pocket.[3] (*Id.* at 3). Plaintiff drove off, the officers apprehended Skourakis, found a white rock in her pocket, and she confirmed that Plaintiff had given her "coke." (*Id.* at 4). Skourakis was then arrested. (*Id.*).

The officers who initially observed Plaintiff alerted Detective Jafeth Chavez ("Chavez") with a description of Plaintiff's car and his whereabouts. (*Id.* at 7). Chavez observed Plaintiff driving and activated his siren to pull Plaintiff over. (*Id.*). Plaintiff, however, continued driving. (*Id.*). When Plaintiff eventually pulled over on Spring Street by Market Square, he exited his vehicle, handed his license to Chavez, and placed his hands on the trunk of his car. (*Id.* at 9). There is a dispute as to what happened next. Defendants claim that Plaintiff fled on foot, was chased by Chavez, and eventually slipped and fell on the ground before being handcuffed. Plaintiff, on the other hand, states that his memory was "shot," and that he only recalls being tackled, kicked, and piled onto by a group of police officers after being pulled over.

Plaintiff was soon thereafter captured on bodycam video being escorted by three officers at the corner of Brandeth Street and Central Avenue which was away from the area where his car

---

[2] Pagination of the Rule 56.1 statement cited herein corresponds to that generated by ECF.

[3] Plaintiff disputes this statement by reference to his own testimony that he did not give any cocaine to Skourakis. Whether he gave her cocaine, however, does not refute the point that officers observed him give her *something* in exchange for money.

was first stopped on Spring Street. (Svensson Decl., Ex. O). Most of Plaintiff's interactions with police that day were captured on video. (*See, e.g.* Svensson Decl., Ex. Y.) Plaintiff was placed into the back seat of the squad car, where Chavez sat with him. (56.1 at 16). Chavez testified at his deposition that he witnessed Plaintiff attempt to conceal contraband in between his buttocks. (*Id.*). Later during the car ride, Chavez also witnessed Plaintiff chewing something and saw a rubber band in his mouth. (*Id.*). Chavez directed him to spit it out, but Plaintiff refused. (*Id.*). Plaintiff requested his inhaler at that time, but officers responded that his breathing seemed fine, and he responded that he "just fe[lt] it coming on." (*Id.* at 17).

After arriving at the Village police station, Plaintiff admitted that he had run from police after being pulled over because he had a "joint" in his car. (Svensson Decl. Ex. Y at 17:35-17:50). The officers at the station, including Schemmer, directed Plaintiff to remove his clothes and conducted a non-contact strip search. (56.1 at 30). Shortly thereafter, Schemmer directed that Plaintiff spit out whatever was in his mouth, although Plaintiff continued chewing and refused to do so. (*Id.* at 36). After multiple warnings that a taser would be used, Schemmer tased Plaintiff for approximately two seconds. (*Id.* at 37). Plaintiff thereafter swallowed what was in his mouth and told Schemmer that he had ingested ten bags of cocaine. (Svensson Decl., Ex. Y at 7:00-7:15). Plaintiff was sent to the hospital via ambulance shortly thereafter (he had been at the police station for approximately 20 minutes). (56.1 at 25). Plaintiff's heart rate was tested at 150 beats per minute, he was diagnosed with a cocaine overdose, and his stomach was pumped. (*Id.* at 27-29).

Plaintiff was ultimately charged with Sale of a Controlled Substance, Resisting Arrest, Tampering with Evidence, and Possession of a Controlled Substance. (*Id.* at 14). A Town of Ossining Justice Court Certificate of Disposition indicates that these charges were eventually disposed of via "Grand Jury." (Svensson Decl., Ex. DD).

3

Defendants now move for summary judgment dismissing the Amended Complaint.

## STANDARD OF REVIEW

Pursuant to Federal Rule of Civil Procedure 56, a court "shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed R. Civ. P. 56(a). "A fact is 'material' if it 'might affect the outcome of the suit under the governing law,' and is genuinely in dispute 'if the evidence is such that a reasonable jury could return a verdict for the nonmoving party.'" *Liverpool v. Davis*, No. 17-CV-3875, 2020 WL 917294, at *4 (S.D.N.Y. Feb. 26, 2020) (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)). "'Factual disputes that are irrelevant or unnecessary' are not material and thus cannot preclude summary judgment." *Sood v. Rampersaud*, No. 12-CV-5486, 2013 WL 1681261, at *1 (S.D.N.Y. Apr. 17, 2013) (quoting *Anderson*, 477 U.S. at 248). The Court's duty, when determining whether summary judgment is appropriate, is "not to resolve disputed issues of fact but to assess whether there are any factual issues to be tried." *Id.* (quoting *Wilson v. Nw. Mut. Ins. Co.*, 625 F.3d 54, 60 (2d Cir. 2010)). Indeed, the Court's function is not to determine the truth or weigh the evidence. The task is material issue spotting, not material issue determining. Therefore, "where there is an absence of sufficient proof as to one essential element of a claim, any factual disputes with respect to other elements of the claim are immaterial." *Bellotto v. Cty. of Orange*, 248 Fed. App'x 232, 234 (2d Cir. 2007) (quoting *Salahuddin v. Goord*, 467 F.3d 263, 281 (2d Cir. 2006)).

"It is the movant's burden to show that no genuine factual dispute exists." *Vermont Teddy Bear Co. v. 1-800 Beargram Co.*, 373 F.3d 241, 244 (2d Cir. 2004) (citing *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 157 (1970)). The Court must "resolve all ambiguities and draw all reasonable inferences in the non-movant's favor." *Id.* (citing *Giannullo v. City of N.Y.*, 322 F.3d 139, 140 (2d

Cir. 2003)). Once the movant has met its burden, the non-movant "must come forward with specific facts showing that there is a genuine issue for trial." *Liverpool*, 2020 WL 917294, at * 4 (quoting *Matsushita Elec. Indus. Co.* v. *Zenith Radio Corp.*, 475 U.S. 574, 586-87 (1986)). The non-movant cannot defeat a summary judgment motion by relying on "mere speculation or conjecture as to the true nature of the facts." *Id.* (quoting *Knight* v. *U.S. Fire Ins. Co.*, 804 F.2d 9, 12 (2d Cir. 1986)). However, if "there is any evidence from which a reasonable inference could be drawn in favor of the opposing party on the issue on which summary judgment is sought, summary judgment is improper." *Sood*, 2013 WL 1681261, at *2 (citing *Sec. Ins. Co. of Hartford v. Old Dominion Freight Line Inc.*, 391 F.3d 77, 83 (2d Cir. 2004)).

Should there be no genuine issue of material fact, the movant must also establish its entitlement to judgment as a matter of law. *See Glover v. Austin*, 289 Fed. App'x 430, 431 (2d Cir. 2008) ("Summary judgment is appropriate if, but only if, there are no genuine issues of material fact supporting an essential element of the plaintiffs' claim for relief."); *Pimentel v. City of New York*, 74 Fed. App'x 146, 148 (2d Cir. 2003) (holding that because plaintiff "failed to raise an issue of material fact with respect to an essential element of her [ ] claim, the District Court properly granted summary judgment dismissing that claim"). Simply put, the movant must separately establish that the law favors the judgment sought.

## ANALYSIS

Plaintiff raises five claims for relief under 42 U.S.C. § 1983 ("§ 1983") (*i.e.*, (i) violation of constitutional rights; (ii) excessive force and assault; (iii) false arrest and malicious prosecution; (iv) negligence; and (v) *Monell*). (Am. Compl. at 7-11). Defendants also interpret the Amended Complaint as purportedly raising claims for: (vi) unreasonable search; and (vii) deliberate indifference to medical needs. (Def. Br. at 17-24). Plaintiff does not explicitly style these two

additional issues as claims for relief, but to the extent they are stated in the Amended Complaint, the Court will address them herein.[4]

Section 1983 provides, in pertinent part, that "[e]very person who, under color of any statute . . . subjects, or causes to be subjected, any citizen of the United States . . . to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured . . . ." 42 U.S.C. § 1983. "[T]his language does not create substantive rights; rather, it creates a mechanism by which individuals can vindicate the violation of rights secured elsewhere." *Santucci v. Levine*, No. 17-CV-10204, 2021 WL 76337, at *3 (S.D.N.Y. Jan. 8, 2021). The Court will address Plaintiff's five underlying claims for relief and additional theories of liability *seriatim*.

## I.   First Claim for Relief: Violation of Constitutional Rights

Plaintiff's first claim for relief alleges that Defendants "violat[ed] Plaintiff's constitutional rights under the color of state law." (Am. Compl. at 7). This generic language, without specifying which constitutional right was violated, is insufficient to establish a standalone claim for relief. The Court will address herein—pursuant to Plaintiff's other, more specific claims for relief— whether his constitutional rights were violated. His first claim for relief, however, is dismissed.

## II.   Second Claim for Relief: Excessive Force and Assault

Plaintiff next alleges that "Defendant assaulted [him] and used excessive force against him." (*Id.*). Plaintiff's excessive force claim is two-fold: (i) that Defendants used excessive force

---

[4] Defendants also state in the preliminary statement of their opening brief that Plaintiff raises a claim relating to his substantive due process rights. (Def. Br. at 1). The Court is unable to ascertain where Plaintiff raises this claim, it is unaddressed in Plaintiff's opposition brief, and Defendants do not discuss it outside of the preliminary statement. The Court, therefore, assumes that Defendants mentioned this additional claim for relief in error. Nevertheless, such a claim would necessarily fail "because when another provision of the Constitution provides an explicit textual source of constitutional protection, the Court must assess Plaintiff's claims under that explicit provision and not the more generalized notion of substantive due process." *Druss v. Muscatella*, No. 20-CV-06341, 2022 WL 3701085, at *8 (S.D.N.Y. Aug. 26, 2022).

against him in effectuating his arrest by tackling him to the ground and kicking him; and (ii) that Defendants again used excessive force by using a taser on him while in the booking area of the Village police station.

"The Fourth Amendment prohibits the use of excessive force in making an arrest, and whether the force used is excessive is to be analyzed under that Amendment's 'reasonableness standard.'" *Brown v. City of New York*, 798 F.3d 94, 100 (2d Cir. 2015) (quoting *Graham v. Connor*, 490 U.S. 386, 395 (1989)). To determine whether an officer's force is objectively reasonable, the Court must balance "the nature and quality of the intrusion on the individual's Fourth Amendment interests against the countervailing governmental interests at stake." *Id.* (quoting *Graham*, 490 U.S. at 396). The "'reasonableness' of a particular use of force must be judged from the perspective of a reasonable officer on the scene, rather than with the 20/20 vision of hindsight." *Id.* (citing *Graham*, 490 U.S. at 396). Where a Plaintiff resists arrest, the "force used by the officer must be reasonably related to the nature of the resistance and the force used, threatened, or reasonably perceived to be threatened, against the officer." *McMillan v. City of New York*, No. 10-CV-02296, 2011 WL 6129627, at *5 (S.D.N.Y. Dec. 9, 2011) (quoting *Sullivan v. Gagnier*, 225 F.3d 161, 166 (2d Cir. 2000)). The Court is mindful that "[n]ot every push or shove, even if it may later seem unnecessary in the peace of a judge's chambers, violates the Fourth Amendment." *Graham*, 490 U.S. at 396 (internal citations and quotations omitted).

A. <u>Alleged Excessive Force to Effect Arrest</u>

It is necessary to first lay out each sides' story with respect to the force used to effectuate Plaintiff's arrest. Defendants' version of events is, essentially, that they did not use force to effect Plaintiff's arrest—beyond *de minimis* contact in picking him up off of the ground and placing handcuffs on him—because he had slipped and fallen to the ground in the midst of a foot pursuit

after officers had pulled him over and he got out of his car. (56.1 at p. 35 ("Mr. Fuentes slipped on wet pavement [and] was face down on the ground when he was apprehended by police")). Defendants' version of the arrest is corroborated by the record. Chavez, a non-party officer who pursued Plaintiff by foot, wrote an arrest report which states that he gave chase after Plaintiff exited his car and began to run towards Spring Street, told Plaintiff to stop, attempted to deploy his taser, and radioed for backup before Plaintiff slipped face-first at the corner of Brandeth Street and Central Avenue. (Svensson Decl., Ex. O). Numerous officers either witnessed Chavez pursue Plaintiff or heard him request help by radio. (*See, e.g.* Svensson Decl., Ex. D, Ex. E). Video evidence confirms that Plaintiff was picked up at a different intersection from where he was pulled over, that his car was nowhere in sight, and that the pavement at the time was wet. (Svensson Decl., Ex. W at 00:24-00:48). Under this version of events, any minimal force used by Defendants to pick Plaintiff up and place him in handcuffs was, as a matter of law, reasonable. *See, e.g. Kalfus v. New York and Presbyterian Hospital*, 476 Fed. App'x 877, 880-81 (2d Cir. 2012) (affirming dismissal of the plaintiff's excessive force claim because no reasonable factfinder could conclude that the officers' actions were excessive where, *inter alia*, the plaintiff had resisted arrest by refusing to stand up or to permit himself to be handcuffed, and the officers used only reasonable force to overcome his resistance).

Plaintiff, on the other hand, testified that after he pulled his car to the side of the road, he "only remember[s] there was a bunch of police on top of [him]." (Svensson Decl., Ex. G at 25:02-04). Plaintiff testified that officers pulled him out of his car and directly onto the ground before piling on top of him. (*Id.* at 25:10-27:14). Plaintiff also testified that he did not recall running. (*Id.* at 28:25). This attempt to raise an issue of fact by Plaintiff based upon Plaintiff's own testimony,

however, fails to create a genuine issue of material fact to defeat summary judgment for a number of reasons.

i.   Failure of Proof

First and foremost, Plaintiff has failed to meet his burden of production by producing evidence, other than his failure to remember, that identifies a genuine issue of material fact. It is, of course, "the movant's burden to show that no genuine factual dispute exists." *Vermont Teddy Bear Co.*, 373 F.3d at 244. Defendants have met that burden by, *inter alia*, providing documentary record evidence such as arrest reports and videos corroborating their own statements, each establishing that excessive force was not used. In this scenario, where "the movant has met its burden, the non-moving party must come forward with specific facts showing that there is a genuine issue for trial." *See Wiggins v. Griffin*, No. 18-CV-07559, 2021 WL 706720, at *3 (S.D.N.Y. Feb. 22, 2021) (internal quotation removed). Plaintiff has simply failed to lay bare such proof of a genuine issue of fact. There is not a single piece of evidence in the record to support Plaintiff's story besides his own testimony that he does not remember. Not one of the officer's statements, no portion of Schemmer's deposition, no video clip, nor any other evidence supports Plaintiff's story that he did not run, nor does any of it contradict Defendants' version of the events.

Plaintiff cites only to his own deposition in his brief on this motion. (Opp. Br. at 4-5).[5] His own conclusory thoughts and allegations, however, are insufficient to refute record evidence because "a nonmoving party's self-serving statement, without direct or circumstantial evidence to

---

[5] Plaintiff claims that Schemmer's deposition testimony that "eventually all of us went to the ground" contradicts the fact that Plaintiff slipped on wet pavement. (Opp. Br. at 4). The testimony concerning falling to the ground, however, occurred much later in the police station when officers were attempting to get Plaintiff to spit out contraband. (*See* Svensson Decl., Ex. D at 29:02-09). This had nothing to do with the effectuation of Plaintiff's arrest. To the extent Plaintiff also argues that a lack of body camera footage supports his position, a lack of evidence is not evidence—this argument amounts to nothing more than speculation.

support the charge, is insufficient to defeat a motion for summary judgment." *See Gewirtzman v. Markowitz*, No. 22-CV-02450, 2022 WL 7588589, at *8 n.5 (S.D.N.Y. Oct. 13, 2022) (quoting *Walker v. Carter*, 210 F. Supp. 3d 487, 503 (S.D.N.Y. 2016)). Even considering the substance of Plaintiff's testimony, his failure to remember certain events occurring does not alter the fact that the record evidence is crystal clear as to what happened. Plaintiff's own conclusory failure to remember constitutes a failure of proof and is insufficient to create a genuine dispute of material fact. *See Berman v. Williams*, No. 17-CV-02757, 2019 WL 4450810, at *5 (S.D.N.Y. Sept. 17, 2019) ("Given the strength of the record, the plaintiff's mere conclusory allegations are insufficient to create a dispute of material fact, especially given that he admits that he cannot remember exactly what happened that day."). Moreover, Plaintiff has failed to deny in response to Defendants' Rule 56.1 statement certain relevant assertions of fact including that he ran from police, slipped on pavement, and was apprehended while already on the ground. (56.1 at p. 35). Those assertions are supported by record evidence, unrefuted in the Rule 56.1 statement, and thus deemed admitted. Plaintiff's complete failure to meet his burden of producing evidence of a genuine issue of material fact, or even denying Defendants' version of events, entitles Defendants to judgment as a matter of law on this branch of Plaintiff's claim.

## ii.  Inconsistent Testimony

Alternatively, even to the extent that Plaintiff's deposition testimony can be construed in a limited way to set forth a narrative of events which refutes Defendants' version, that testimony is incomplete, contradictory, and is insufficient to create a genuine issue of material fact. "While credibility determinations are not typically within the Court's purview at the summary judgment stage," a court may decline to credit a plaintiff's testimony when "no reasonable person would undertake the suspension of disbelief necessary to give credit to the allegations made in [the]

complaint." *Jeffreys v. City of New York*, 426 F.3d 549, 555 (2d Cir. 2005). The Court recognizes that the *Jeffreys* exception judging credibility at the summary judgment stage is a narrow one, reserved for "the rare circumstance where the plaintiff relies almost exclusively on his own testimony, much of which is contradictory and incomplete [and] is so problematic that no reasonable juror could credit it." *Frost v. New York City Police Dep't*, 980 F.3d 231, 245 (2d Cir. 2020).

This case, however, *is* one of those "extraordinary cases in which no reasonable factfinder could conclude in favor of plaintiff on his excessive force claim because that claim relies almost exclusively upon plaintiff's allegations in his complaint [and his own deposition testimony], which are unexplainedly inconsistent and contradictory." *Taylor v. Ridley*, 904 F. Supp. 2d 222, 232 (E.D.N.Y. 2012). Plaintiff testified that he is unable to provide a full recitation of the events at issue because his "memory is shot." (Svensson Decl., Ex. G at 24:14). Plaintiff's testimony also contradicts both the joint Rule 56.1 statement and his admissions to police the day of his arrest. Plaintiff testified in his deposition that police "came to my car . . . opened the door, and threw me right on the floor" (Svensson Decl., Ex. G at 25:10-11), but admitted in the joint 56.1 statement that he "exited his vehicle, handed Det. Chavez his license and placed his hands on the trunk of the car" (56.1 at p. 9). Plaintiff testified at his deposition that he did not recall running but on the day of his arrest told officers—on video—that he ran from police after being pulled over because he had a joint in the car. (Svensson Decl., Ex. Y at 17:35-17:50). These contradictions render Plaintiff's testimony so problematic that no reasonable juror could possibly find in his favor. The evidence proffered by Plaintiff creates no genuine issue of material fact to preclude summary judgment on this claim because Plaintiff's testimony, under *Jeffreys*, must be discredited. *See, e.g. Taylor*, 904 F. Supp. 2d at 233. In sum, "no reasonable person would undertake the suspension of

disbelief necessary to give credit" to Plaintiff's version of events in this case. *Jeffreys*, 426 F.3d at 555.

### B.   Use of a Taser

Plaintiff next claims that Defendants used excessive force on him when they tased him to get him to spit out contraband. This entire interaction was captured on video and there is no dispute as to what happened. (56.1 at p. 36-38; Svensson Decl., Ex. Y at 6:15-7:30). While in the booking area at the police station, Plaintiff struggled with police and was told by police multiple times to spit out what he had in his mouth. (Svensson Decl., Ex. Y at 6:15-6:55). Plaintiff was warned that he would be tased if he did not spit the material out. (*Id.*). Ignoring the officers' repeated instructions and warnings, Plaintiff refused to spit out and instead continued to chew the material in his mouth. (*Id.*). Schemmer then used his taser on Plaintiff for approximately two seconds in an attempt to get him to spit out what was in his mouth which, at that time, Schemmer suspected was cocaine. Schemmer based his suspicion on the events of Plaintiff's arrest and having previously seen a rubber band in Plaintiff's mouth. (*Id.* at 6:55-7:15; Schemmer Decl., Ex. E at 31-32, 48-49). Plaintiff then swallowed what was in his mouth and told Schemmer that he had ingested "ten bags" of cocaine. (*Id.* at 7:00-7:20).

"[U]se of a taser . . . constitutes significant force," *Jones v. Treubig*, 963 F.3d 214, 226 (2d Cir. 2020), but the totality of the circumstances leads this Court to conclude that no reasonable factfinder could find that use of the taser was objectively unreasonable here. Second Circuit "precedents suggest that it is *not* excessive force to deploy tasers, after a warning, against arrestees who are . . . resisting arrest." *Penree ex rel. Penree v. City of Utica, New York*, 694 F. App'x 30, 33 (2d Cir. 2017) (citing *MacLeod v. Town of Brattleboro*, 548 F. App'x 6, 7-8 (2d Cir. 2013); *Crowell v. Kirkpatrick*, 400 F. App'x 592, 595-96 (2d Cir. 2014) (emphasis in original)); *see also*

12

*Wehling v. Vill. of Medina*, No. 16-CV-00746, 2020 WL 5633631, at *9 (W.D.N.Y. Jan. 28, 2020) ("[R]elevant case law generally suggests . . . it is reasonable to tase a fleeing or unruly suspect who has not yet been handcuffed or otherwise secured." (quoting *Lee v. City of Utica, New York*, No. 10-CV-01446, 2013 WL 12140336, at *4 (N.D.N.Y. Mar. 5, 2013) (emphasis omitted)), *adopted by* 2020 WL 5628990 (W.D.N.Y. Sept. 21, 2020).

Although Plaintiff had already been detained at this point, it is clear from video that he repeatedly ignored police instruction, struggled with police, was chewing on something that Schemmer believed was cocaine, and continued to be uncooperative. "Although neither the Supreme Court nor the Second Circuit has specifically defined 'active resistance,' the Second Circuit has upheld uses of force involving tasers where the suspect was actively non-compliant with the Officers' directions." *See Scoma v. City of New York*, No. 16-CV-06693, 2021 WL 230295, at *8 (E.D.N.Y. Jan. 22, 2021) (concluding that the use of a taser "to subdue an actively non-compliant suspect . . . who posed a real and imminent threat to the safety of the officers and any bystanders" was objectively reasonable where the officers gave "repeated, clear commands that [the plaintiff] return to the ground" (quoting *MacLeod*, 548 F. App'x at 8)), *adopted by* 2021 WL 1784385 (E.D.N.Y. May 4, 2021). Whether or not Plaintiff was sufficiently uncooperative to be actively resistant, Plaintiff clearly posed a significant danger to himself in refusing to spit out, and eventually swallowing, a significant amount of cocaine that ultimately caused him to overdose and required his stomach to be pumped at the hospital. He simply refused to follow Schemmer's repeated and lawful directions. He was warned multiple times that a taser would be deployed. *See Dinkins v. New York*, No. 19-CV-08447, 2021 WL 3173968, at *7 (S.D.N.Y. July 26, 2021) ("conclude[ing] that no reasonable factfinder could find that [the] use of the taser was objectively unreasonable" in part because the "[plaintiff did] not dispute that [d]efendant issued . . . warnings"

before using the taser). Similarly, here no jury could find the use of a taser under these circumstances to have been unreasonable.

Counsel has not provided, nor has the Court found, cases in this Circuit considering the use of a taser to prevent an arrestee from swallowing contraband. The Court, however, is persuaded by the reasoning of other Courts that have. *See, e.g. Love v. Rockford Illinois Mun. Police Dep't*, No. 08-CV-050254, 2013 WL 159246, at *2 (N.D. Ill. Jan. 15, 2013) (finding the use of a taser "several times" to be reasonable under similar circumstances and noting that "[f]ailure to use reasonable force to prevent plaintiff from [swallowing contraband] could very well have resulted in plaintiff harming himself" and that "this in turn may have led to a lawsuit on that basis."). New York's Appellate Division in *Atkinson* also considered whether the alleged use of excessive force under identical circumstances required the suppression of evidence and concluded that:

> [T]he officers were trying to protect defendant's health and safety by seeking to remove the drugs from his mouth. The tasers were used after warnings and in response to defendant's actions and refusal to comply with orders, which created a potentially dangerous situation for the officers and defendant himself. The police were required to react quickly to safely resolve the situation. Under the circumstances, the police officers' response was reasonable.

*People v. Atkinson*, 989 N.Y.S.2d 685, 688 (2014). The situation here was no different than the facts of *Atkinson* except that Atkinson was tased three separate times while Plaintiff was tased only once. Defendants' use of force was reasonable in order to protect Plaintiff from further harming himself by ingesting the bags of cocaine he was chewing on.[6] The use of the taser was also

---

[6] The Court additionally notes that this use of a taser is consistent with the Village's standards for such. (*See* Svensson Decl., Ex. JJ (authorizing use "[t]o prevent a person from what the officer perceives is an attempt by the subject to harm him or herself" or "[t]o bring an unlawful situation safely and effectively under control."). Standing alone however, this policy is not dispositive of Plaintiff's claim for relief.

reasonable in order to permit the officers to bring an unlawful situation to a safe and effective conclusion.

Therefore, and as a matter of law, the use of the taser in this circumstance was not excessive.[7]

### C. Assault

Plaintiff also raises an assault theory of liability under New York State law. (*See* Am. Compl. at 7). This theory fails for many of the same reasons as Plaintiff's excessive force theory. "With the exception of the state actor requirement, the elements of a Section 1983 excessive force claim and state law assault and battery claims are substantially identical." *Chamberlain v. City of White Plains*, 986 F. Supp. 2d 363, 398 (S.D.N.Y. 2013) (citing *Posr v. Doherty*, 944 F.2d 91, 94-95 (2d Cir. 1991)). Nevertheless, "[u]nder New York law, to plead an assault claim, Plaintiff must allege physical conduct placing her in imminent apprehension of harmful contact." *Baker v. City of New York*, 551 F. Supp. 3d 258, 269 (S.D.N.Y. 2021) (internal quotation removed). Here, "Plaintiff never testified that he was in fear of any contact from [Defendants], nor can such an inference be reasonably drawn from Plaintiff's testimony." *Lewis v. City of New York*, No. 04-CV-05655, 2009 WL 935955, at *9 (E.D.N.Y. Mar. 31, 2009). To the contrary, Plaintiff testified that he "only remember[s] there was a bunch of police on top of [him]." (Svensson Decl., Ex. G at 25:02-04). There is, thus, no indication that Plaintiff ever apprehended harmful contact. His assault theory of liability therefore must fail.

---

[7] The Court need not, given this disposition, consider Defendants' argument that they are entitled to qualified immunity. With respect to both effectuating arrest and the use of a taser, Defendants' use of force was reasonable. When the force used is reasonable, Plaintiff's excessive force claim necessarily fails and Defendants' affirmative defense becomes moot. The Court need not wade into the "already murky area of judging qualified immunity issues" here. *Hanniford v. City of Poughkeepsie*, No. 21-CV-10359, 2022 WL 17325762, at *4 (S.D.N.Y. Nov. 29, 2022).

Plaintiff's second claim for relief is, accordingly, dismissed.[8]

III.    Third Claim for Relief: False Arrest and Malicious Prosecution

Movant suggests that Plaintiff's third claim is an amalgamation of two separate claims for relief: (i) false arrest; and, (ii) to the extent separately raised, malicious prosecution. Plaintiff alleges, in sum, that he was taken into custody and "detained for an inordinate length of time" despite never being "uncooperative, a threat to the safety of himself or others or disorderly, nor had he committed any criminal offense." (Am. Compl. at 6). Each claim will be considered herein.

A.    False Arrest

To prove a false arrest claim, a plaintiff is required to show that "the defendant intentionally confined him without his consent and without justification." *Weyant v. Okst*, 101 F.3d 845, 852 (2d Cir. 1996); *see also Jenkins v. City of New York*, 478 F.3d 76, 84 (2d Cir. 2007). Probable cause "is an absolute defense to a false arrest claim." *Jaegly v. Couch*, 439 F.3d 149, 152 (2d Cir. 2006). "Probable cause to arrest . . . exists when the officer has knowledge or reasonably trustworthy information of facts and circumstances that are sufficient to warrant a person of reasonable caution in the belief that the person to be arrested has committed or is committing a crime." *Wierzbic v. Howard*, 836 Fed. App'x 31, 34-35 (2d Cir. 2020) (internal quotation marks omitted). This standard is an objective one and evaluates "the reasonable conclusion to be drawn from the facts known to the officer at the time of the arrest." *Devenpeck v. Alford*, 543 U.S. 146, 152 (2004). This standard requires that a court consider "the totality of the circumstances and . . . be aware that probable cause is a fluid concept—turning on the assessment of probabilities in

---

[8] To the extent that Plaintiff's vaguely-worded excessive force claim can also be interpreted to encompass any of Defendants' actions while Plaintiff was in the squad car or during booking aside from the use of a taser, it is clear from uncontroverted video evidence that no excessive force was used. (Svensson Decl., Ex. Y at 0:00-27:00). Plaintiff, moreover, admits as much in the joint Rule 56.1 statement. (56.1 at p. 36).

particular factual contexts—not readily, or even usefully, reduced to a neat set of legal rules." *Panetta v. Crowley*, 460 F.3d 388, 395 (2d Cir. 2006) (internal quotation marks omitted).

It is well-settled that hearsay can be used to "establish probable cause." *Hamilton v. City of New York*, No. 15-CV-04574, 2019 WL 1452013, at *11 (E.D.N.Y. Mar. 19, 2019) (quoting *United States v. Parcel of Prop.*, 337 F.3d 225, 236 (2d Cir. 2003)). If there is reason to doubt a witness's credibility, corroborating evidence can support probable cause. *See Toussaint v. Cnty. of Westchester*, No. 21-CV-03817, 2022 WL 2834108, at *5 (S.D.N.Y. July 20, 2022); *Brodie v. Fuhrman*, No. 07-CV-04212, 2010 WL 1189347, at *5-6 (E.D.N.Y. Mar. 29, 2010). "The question of whether or not probable cause existed may be determinable as a matter of law if there is no dispute as to the pertinent events and the knowledge of the officers . . . ." *Weyant*, 101 F.3d at 852.

Defendants primarily base their assertion of probable cause on two pieces of evidence gleaned prior to Plaintiff's arrest: (i) observation of Skourakis handing Plaintiff money in exchange for something from Plaintiff which she put in her right pocket; and (ii) Skourakis' statement that she had purchased cocaine from Plaintiff. (Def. Br. at 7; 56.1 at p. 3-4). Plaintiff contests these two pieces of evidence as follows: (i) "[t]he police are not competent to testify observing a female had (sic) the operator money in exchange for any item"; and (ii) Skourakis' "self-serving statement is denied" by Plaintiff. (56.1 at p. 3). Neither of these arguments establish a genuine issue of material fact. First and foremost, Plaintiff was a known drug dealer. (*See, e.g.* Svensson Decl., Ex. E). With respect to police observation, there is no evidence of any competency issue of any of the officers who observed Plaintiff transact with Skourakis. To the contrary, each officer on the scene filed arrest reports corroborating their observations. (*See, e.g.* Svensson Decl., Ex. D (Officer Hadjstylianos stating that "[o]fficers then observed [Skourakis] hand [Plaintiff] money [and] receive an item from [Plaintiff] and place it into her right jacket pocket.")). With respect to

Skourakis' statement, it is unclear how admitting to purchasing cocaine from Plaintiff, which led to her own arrest, was "self-serving." In any event, probable cause is to be determined based on "the facts known to the officer *at the time of the arrest*." *Devenpeck*, 543 U.S. at 152 (emphasis added). Defendants had no reason to doubt Skourakis's statement at the time of arrest which was consistent with their own observations. Under these circumstances, it is clear that Defendants had probable cause to arrest Plaintiff and Plaintiff's false arrest claim necessarily fails.[9]

Moreover, Plaintiff is collaterally estopped from contesting probable cause because, pursuant to Title 28 U.S.C. § 1738, "issues actually litigated in a state-court proceeding are entitled to the same preclusive effect in a subsequent federal §1983 suit as they enjoy in the courts of the State where the judgment was rendered." *Migra v. Warren City Sch. Dist. Bd. of Educ.*, 465 U.S. 75, 83 (1984). "Under New York law, collateral estoppel prevents a party from relitigating an issue decided against that party in a prior adjudication. It may be invoked to preclude a party from raising an issue (1) identical to an issue already decided (2) in a previous proceeding in which that party had a full and fair opportunity to litigate." *Curry v. City of Syracuse*, 316 F.3d 324, 331 (2d Cir. 2003). These elements are met here. A Justice in Ossining Village Court determined that "there appears to be legally sufficient evidence or in any event probable cause that . . . Mr. Fuentes engaged in the act of violation of section . . . 215.40 subdivision 2 of the penal law which is tampering or concealment of evidence." (Svensson Decl., Ex. FF at 77). The determination of probable cause is identical here. Plaintiff had a full and fair opportunity to litigate this issue in the prior proceeding where he faced higher stakes, including his own liberty. Accordingly, he is estopped from contesting probable cause in this litigation. Such probable cause, as discussed *supra*, defeats Plaintiff's false arrest claim.

---

[9] Given this disposition, the Court need not and does not address Defendants' argument as to qualified immunity.

18

B.  Malicious Prosecution

The Court has reviewed in detail the Amended Complaint and finds no specific allegation related to malicious prosecution. However, out of an abundance of caution because Plaintiff was *pro se* at the time of filing, and because Defendants raise the issue, the Court will consider Plaintiff's third claim for relief to include a claim of malicious prosecution.

To establish a § 1983 claim for malicious prosecution, "a plaintiff must . . . establish the elements of a malicious prosecution claim under state law." *Frost v. New York City Police Dep't*, 980 F.3d 231, 242 (2d Cir. 2020) (quoting *Manganiello v. City of New York*, 612 F.3d 149, 160-61 (2d Cir. 2010)). Under New York law, a plaintiff must allege: "(1) the initiation or continuation of a criminal proceeding against plaintiff; (2) termination of the proceeding in plaintiff's favor; (3) lack of probable cause for commencing the proceeding; and (4) actual malice as a motivation for defendant's actions." *Id.* (internal quotation marks omitted). When pressing a malicious prosecution claim under § 1983, the plaintiff must show also "that there was (5) a sufficient post-arraignment liberty restraint to implicate his Fourth Amendment rights." *Rohman v. New York City Transit Auth.*, 215 F.3d 208, 215 (2d Cir. 2000). Recently, the United States Supreme Court modified the "termination" element of malicious prosecution. *See Thompson v. Clark*, 142 S. Ct. 1332, 1341 (2022) (holding "that a Fourth Amendment claim under § 1983 for malicious prosecution does not require the plaintiff to show that the criminal prosecution ended with some affirmative indication of innocence.") Now the "termination" element requires only that a plaintiff show "that the criminal prosecution ended without a conviction." *Id.* Nevertheless, as with false arrest, a claim for malicious prosecution necessarily fails with the existence of probable cause. *Manganiello v. City of New York*, 612 F.3d 149, 161 (2d Cir. 2010).

19

"Like a false arrest claim, the existence of probable cause is a complete defense to a claim of malicious prosecution in New York." *Johnson v. City of New York*, No. 18-CV-06256, 2020 WL 2732068, at *5 (S.D.N.Y. May 26, 2020) (internal quotation removed). "The Second Circuit has established that the probable cause standard in the malicious prosecution context is slightly higher than the standard for false arrest cases because in the malicious prosecution context the facts and circumstances must be such that a reasonably prudent person would believe the plaintiff guilty." *Wheeler v. Kolek*, No. 16-CV-07441, 2020 WL 6726947, at *9 (S.D.N.Y. Nov. 16, 2020) (internal quotations removed). However, "[o]nce probable cause to arrest has been established, claims of malicious prosecution survive only if, between the arrest and the initiation of the prosecution, the groundless nature of the charges is made apparent by the discovery of some intervening fact." *Smith v. Tobon*, 529 F. App'x 36, 38 (2d Cir. 2013) (internal quotation removed).

Plaintiff has not cited—and the record does not appear to contain—any evidence of an intervening fact between arrest and prosecution that would negate probable cause. *See Johnson*, 2020 WL 2732068 at *5 ("As the Court has concluded that Defendants had probable cause to arrest Plaintiff at the time of the arrest—and Plaintiff has not set forth any evidence tending to show that, between the time of his arrest and the initiation of his prosecution, Defendants learned of any intervening fact that could eliminate probable cause—his malicious prosecution claim fails."). In fact, and as discussed *supra*, the Ossining Village Court found that probable cause existed here, fortifying Defendants' initial determination of probable cause to arrest and charge. Given these facts, the slightly higher standard of probable cause required in the malicious prosecution context that a reasonably prudent person would believe Plaintiff guilty has been met. Plaintiff's malicious prosecution claim thus necessarily fails.

Plaintiff's third claim for relief is, accordingly, dismissed.

20

IV.    Fourth Claim for Relief: Negligence

Plaintiff's fourth claim for relief alleges that Defendants "negligently, carelessly, recklessly injured the Plaintiff." (Am. Compl. at 8). Negligence is, of course, governed by state law and is not a proper claim for relief under § 1983. *See* 42 U.S.C. § 1983 (establishing a cause of action for "deprivation[s] of any rights, privileges, or immunities *secured by the Constitution and [federal] laws*" (emphasis added)); *see also, e.g. Fiacco v. City of Rensselaer, N.Y.*, 783 F.2d 319 (2d Cir. 1986). As such, "[t]he Second Circuit has explained that, although 'ordinary negligence by itself could not establish a cause of action under [Section] 1983 . . . repeated acts of negligence [can] be evidence of indifference.'" *Tylena M. v. Heartshare Children's Servs*., 390 F. Supp. 2d 296, 306 (S.D.N.Y. 2005) (quoting *Doe v. New York City Dep't. of Social Services*, 649 F.2d 134, 141 (2d Cir.1981)). Plaintiff here has not established—or even alleged—repeated acts of negligence and, as discussed *supra*, fails to otherwise establish a claim for deliberate indifference. Thus, to the extent Plaintiff intends to bring his negligence claim under § 1983, that claim necessarily fails.[10]

Plaintiff's fourth claim for relief is, accordingly, dismissed.

V.    Purported Claim for Relief: Unreasonable Search

Plaintiff claims that, while at the Village police station, he "was ordered to remove all of his clothing so that he could be searched." (Am. Compl. at 5). To the extent this allegation states an independent claim for relief, it is one for unreasonable search under the Fourth Amendment.

---

[10] To the extent Plaintiff intended to bring his negligence claim exclusively under state law, because each of Plaintiff's federal claims are dismissed herein, the Court declines to exercise supplemental jurisdiction over any such claim. *See, e.g., Toussaint v. Cnty. of Westchester*, No. 21-CV-03817, 2022 WL 2834108, at *10 (S.D.N.Y. July 20, 2022) (citing *McLeod v. Jewish Guild for the Blind*, 864 F.3d 154, 158 n.6 (2d Cir. 2017) ("Of course, a district court may decline to exercise supplemental jurisdiction over state and local law claims if it has dismissed all claims over which it has original jurisdiction.")).

The Fourth Amendment provides, in pertinent part, that "[t]he right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated . . . ." U.S. Const. amend. IV. This language, "incorporated against the states by the Fourteenth Amendment, guarantees all individuals the right to be free from unreasonable search and seizure." *Corley v. Vance*, 365 F. Supp. 3d 407, 443 (S.D.N.Y. 2019), *aff'd sub nom. Corley v. Wittner*, 811 F. App'x 62 (2d Cir. 2020). "A 'search' occurs for purposes of the Fourth Amendment if the police seek information by intruding on a person's reasonable expectation of privacy or by means of trespassing upon one's person, house, papers, or effects." *United States v. Smith*, 967 F.3d 198, 205 (2d Cir. 2020). With respect to strip searches at the time of arrest, their reasonableness depends on "the reasonable suspicion that a misdemeanor arrestee is concealing weapons or other contraband based on the crime charged, the particular characteristics of the arrestee, and/or the circumstances of the arrest." *Wheeler v. Artola*, No. 16-CV-07440, 2019 WL 4593651, at *14 (S.D.N.Y. Sept. 23, 2019) (internal quotation omitted), *aff'd*, 852 F. App'x 589 (2d Cir. 2021). "[T]he suspicion need not rise to the level of probable cause, but it must be more substantial than an inarticulate hunch." *Fate v. Charles*, 24 F. Supp. 3d 337, 346 (S.D.N.Y. June 5, 2014). Moreover, "[a]ll searches must be reasonable in scope and manner of execution." *Id.* at 345 (internal quotation omitted).

Defendants here conducted a strip search of Plaintiff, while at the police station, in search of contraband. (56.1 at p. 30). There is no allegation that a visual body cavity search was conducted. Such a contactless search with no inspection of bodily cavities is the least intrusive form of strip search recognized in this Circuit. *See, e.g. Gonzalez v. City of Schenectady*, 728 F.3d 149, 154 (2d Cir. 2013). Such a search is justified "[i]f an arresting officer has reason to believe, based on 'specific and articulable facts . . . taken together with rational inferences from those facts,'

22

that an arrestee is secreting contraband inside a body cavity." *Sloley v. VanBramer*, 945 F.3d 30, 38 (2d Cir. 2019) (quoting *Terry v. Ohio*, 392 U.S. 1, 21 (1968)). In sum, such a search must be based on reasonable suspicion. "Although a mere hunch does not create reasonable suspicion, the level of suspicion the standard requires is considerably less than proof of wrongdoing by a preponderance of the evidence, and obviously less than is necessary for probable cause." *Id.* at 43 (quoting *Navarette v. California*, 572 U.S. 393, 397 (2014)).

Defendants, as discussed *supra*, had *probable cause* to believe that Plaintiff had committed a drug transaction based on their observations of his interaction with Skoukaris and her statement to officers. Moreover, Chavez observed Plaintiff appear to try to conceal something between his buttocks at the time of arrest.[11] (56.1 at p. 30). The specific fact of Plaintiff's participation in a drug transaction, combined with Chavez's observation, rationally led Defendants to infer that Plaintiff had concealed contraband. Indeed, Plaintiff concealed contraband in his mouth which later turned out to be cocaine. Such circumstances are more than sufficient to create the reasonable suspicion required to justify a strip search.[12]

Plaintiff's claim for relief, to the extent it exists, is, accordingly, dismissed.

---

[11] Plaintiff argues in his opposition brief that, in order to have concealed drugs in his buttocks while handcuffed in front of Chavez, he "must have acquired or attained double jointed muscles and joints and was ambidextrous besides being extremely limber." (Opp. Br. at 10). This pure speculation as to the flexibility required to conceal drugs while handcuffed is farfetched and does not suffice to create an issue of fact.

[12] To the extent Plaintiff also complains of searches conducted prior to the strip search (a pat-down during his arrest and being asked to spit out what was in his mouth), each of those searches were considerably less intrusive than the strip search. Those searches were in any event justified by the same reasonable suspicion of the possession of contraband discussed herein.

VI.   <u>Purported Claim for Relief: Deliberate Indifference to Medical Needs</u>

Lastly, Plaintiff alleges that Defendants were deliberately indifferent to his medical needs because he was "denied access to his [COPD] pump despite numerous requests therefor, for an inordinately long period of time." (Am. Compl. at 5).

The Due Process Clause of the Fourteenth Amendment "requires the responsible government or governmental agency to provide medical care to persons who have been injured while being apprehended by the police." *Ricks v. O'Hanlon*, No. 07-CV-09849, 2010 WL 245550, at *7 (S.D.N.Y. Jan. 19, 2010) (alterations omitted) (quoting *City of Revere v. Mass. Gen. Hosp.*, 463 U.S. 239, 244 (1983)).[13] As such, "[w]hen a denial of medical care claim arises in the context of arrest and pretrial detainment, 'the official custodian of [the arrestee] may be found liable for violating the [arrestee's] due process rights if the official denied treatment needed to remedy a serious medical condition and did so because of his deliberate indifference to that need.'" *Id.* (quoting *Weyant*, 101 F.3d at 856. "This standard requires that plaintiffs satisfy what are commonly referred to as the 'objective and subjective prongs.'" *Horace v. Gibbs*, 802 F. App'x 11, 14 (2d Cir. 2020). Under the objective prong, the plaintiff must show that the alleged deprivation of medical care was sufficiently serious . . . . There is no static test to determine whether a deprivation is sufficiently serious; instead, the conditions themselves must be evaluated in light of contemporary standards of decency." *Id.* at *14 (internal citations omitted). As to the subjective prong, "an official does not act in a deliberately indifferent manner toward an arrestee

---

[13] "Because Plaintiff was a pretrial detainee when he was allegedly denied medical care, his claim falls under 'the Due Process Clause of the Fourteenth Amendment, rather than the Cruel and Unusual Punishments Clause of the Eight[h] Amendment.'" *Behlin v. Rite Aid Pharmacy Store*, No. 18-CV-04335, 2022 WL 220017, at *8 (S.D.N.Y. Jan. 25, 2022) (quoting *Darnell v. Pineiro*, 849 F.3d 17, 29 (2d Cir. 2017)). Far from a denial of medical care, it appears that Defendants' actions in calling for medical attention may have saved Plaintiff's life, as he was diagnosed with and treated for a cocaine overdose at the hospital. (*See* 56.1 ¶¶ 30-31).

unless the official acted intentionally to impose the alleged condition, or recklessly failed to act with reasonable care to mitigate the risk." *Id.* (quotation omitted).

Defendants' refusal to give Plaintiff his inhaler simply fails to meet the level of objective seriousness necessary to constitute a violation of the Fourteenth Amendment. Plaintiff has failed to establish a single injury from this refusal and his medical records, as well as the video evidence of his arrest, bely any such claim. (*See* Svensson Decl., Ex. PP; Ex. X).[14]

Judge Gardephe considered the objective seriousness of a similar incident in *Walton v. Lee*, 15-CV-03080, 2019 WL 1437912, at *7-8 (S.D.N.Y. Mar. 29, 2019). Plaintiff in that case alleged that the defendants were deliberately indifferent for taking away his inhaler during a prison transport and turning off the air conditioning in the vehicle despite his requests, causing him to lose consciousness. *Id.* at *7. That court found that "[i]njuries such as those alleged by Walton, which amount to no more than temporary or minor discomfort, cannot support a deliberate indifference claim" because "only deprivations denying the minimal civilized measure of life's necessities are sufficiently grave to constitute deliberate indifference to medical needs." *Id.* at *8 (internal quotation removed). Plaintiff here did not lose consciousness and any injuries he faced were much less serious than Walton's. Plaintiff's deliberate indifference claim must therefore fail at the objective prong.[15]

Plaintiff's purported claim for relief, to the extent it exists, is, accordingly, dismissed.

---

[14] To the extent Plaintiff claims to have suffered a heart attack, Plaintiff proffers no evidence to support that claim. *See* Svensson Decl., Ex. PP. Moreover, there is no causal link between any alleged heart attack and any conduct by Defendants.

[15] The Court, given this disposition, need not consider the second prong of this claim—Defendants' subjective intent—but notes, however, that there is a dearth of evidence in the record to suggest that Defendants acted intentionally or with reckless disregard. *See Camacho v. DuBois*, No. 21-CV-06180, 2022 WL 17807433, at *5 (S.D.N.Y. Dec. 19, 2022); *Rivera v. Connolly,* No. 18-CV-03958, 2022 WL 1785313, at *6 (S.D.N.Y. June 1, 2022).

VII.   <u>Fifth Claim for Relief: *Monell* Liability</u>

Plaintiff's fifth claim for relief is brought under *Monell* against the Village. Under *Monell* and its progeny, a municipality may be held liable where a plaintiff's constitutional rights are violated because of a municipal policy or custom. *See Jimenez v. City of New York*, No. 18-CV-07273, 2020 WL 1467371, at *3 (S.D.N.Y. Mar. 26, 2020) ("Plaintiff must plead allegations that 'the government body *itself* subjects a person to a deprivation of rights or causes a person to be subjected to such deprivation.'" (quoting *Connick v. Thompson*, 563 U.S. 51, 60 (2011) (emphasis in original)). "[T]o prevail on a claim against a municipality under section 1983 based on acts of a public official, a plaintiff is required to prove: (1) actions taken under color of law; (2) deprivation of a constitutional or statutory right; (3) causation; (4) damages; and (5) that an official policy of the municipality caused the injury." *Triano v. Town of Harrison, New York*, 895 F. Supp. 2d 526, 531 (S.D.N.Y. 2012) (quoting *Roe v. City of Waterbury*, 542 F.3d 31, 36 (2d Cir. 2008)).

However, such a claim "cannot lie in the absence of an underlying constitutional violation." *Galgano v. Cty. of Putnam*, No. 16-CV-03572, 2020 WL 3618512, at *9 (S.D.N.Y. July 2, 2020) (quoting *DeRaffele v. City of New Rochelle*, No. 15-CV-00282, 2017 WL 2560008, at *6 (S.D.N.Y. June 13, 2017)). As discussed herein, Plaintiff has failed to establish any underlying violation of his constitutional rights and his *Monell* claim, therefore, must fail.

Alternatively, Plaintiff's *Monell* claim fails because the record is devoid of evidence of the existence of a municipal policy or practice causing injury. Plaintiff's allegations in this regard are only of his own experience. *See, e.g.*, *Smith v. Westchester Cty.*, No. 19-CV-01283, 2019 WL 5816120, at *5 (S.D.N.Y. Nov. 7, 2019) (dismissing *Monell* claim where plaintiff "describe[d] only his own experiences"); *Oriental v. Vill. of Westbury*, No. 18-CV-03878, 2019 WL 4861413, at *4 (E.D.N.Y. Oct. 2, 2019) (dismissing *Monell* claim where "the complaint contain[ed] only a

detailed account of plaintiffs' own experiences"). Plaintiff broadly *alleges* that the Village maintained "unwritten" policies depriving Plaintiff of constitutional rights, including, *inter alia*, those relating to "strip searches of males of African American, Caribbean, Hispanic and Black descent," "dispens[ing] with the Rules and Regulations pertaining to formal filing of charges and making arrests," "interrogating and tasering, and obtaining medical assistance for individuals, particularly those having COPD," and "otherwise using unreasonable and excessive force." (Am. Compl. at 2-3; 9-10). Plaintiff also broadly alleges that Defendants failed to supervise and/or train with respect to these constitutional issues.

Plaintiff, however, has not supported his claims of policies and practices or supervision and training with any evidence. Not a single deposition witness has testified to the existence of such, and no other documentary evidence has been cited. Plaintiff's conclusory and boilerplate allegations are insufficient to withstand summary judgment on this claim. *See Rivera v. Westchester Cty.*, No. 18-CV-08354, 2019 WL 3958425, at *5 (S.D.N.Y. Aug. 22, 2019) (holding that plaintiff's "boilerplate assertions" that municipality "failed to train and supervise its staff . . . [are] insufficient, without more, to state a *Monell* claim."); *see also Sutton v. City of Yonkers*, No. 13-CV-00801, 2015 WL 390189, at *5 (S.D.N.Y. Jan. 26, 2015) ("A plaintiff's conclusory allegations of municipal liability will not defeat a motion for summary judgment on a *Monell* claim." (internal quotation removed)), *adopted by,* No. 13-CV-00801, 2015 WL 876459 (S.D.N.Y. Mar. 2, 2015).

Plaintiff, moreover, declined to address, much less rebut, Defendants' arguments with respect to his *Monell* claim. (*See generally* Opp. Br.). The Court considers this claim to therefore be abandoned and any arguments thereto waived. *See Tarrant v. City of Mount Vernon*, No. 20-CV-09004, 2021 WL 5647820, at *5 (S.D.N.Y. Dec. 1, 2021) ("Plaintiff chose consciously, by his

silence [in opposition], to waive and abandon any argument he could have made."); *see also Felske v. Hirschmann*, No. 10-CV-08899, 2012 WL 716632, at *3 (S.D.N.Y. Mar. 1, 2012) ("A plaintiff effectively concedes a defendant's arguments by his failure to respond to them.").

Plaintiff's seventh claim for relief is, therefore, dismissed.

## <u>CONCLUSION</u>

For the foregoing reasons, Defendants' motion for summary judgment is GRANTED and the Amended Complaint is dismissed with prejudice.

The Clerk of Court is respectfully requested to terminate the motion sequence pending at Doc. 56 and close this case.


Dated: White Plains, New York
       January 13, 2023

**SO ORDERED:**

_____
Philip M. Halpern
United States District Judge